IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NANCY C. CORTEZ,                      Civ. No. 04-1404-HO

        Plaintiff,                  ORDER

    v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

Plaintiff seeks review of the final decision of the Commissioner denying her application for disability insurance benefits.

## Discussion

Plaintiff argues that the administrative law judge (ALJ) (1) failed to compare symptoms, signs and laboratory findings pertaining to plaintiff's medical condition with the criteria of the listing of impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listings), (2) failed to consider plaintiff's impairments in combination, (3) improperly rejected the opinions of plaintiff's treating physician, (4) failed to consider plaintiff's global

assessment of functioning (GAF), (5) failed to develop the record, (6) improperly rejected plaintiff's testimony, (7) improperly rejected the testimony of plaintiff's spouse, (8) posed an invalid hypothetical question to the vocational expert (VE), and (9) improperly relied on VE testimony lacking proper foundation.

Plaintiff does not argue that she meets or equals a listed impairment, provide a theory of medical equivalency, or identify particular impairments and attributable functional limitations the ALJ allegedly should have considered. In these circumstances, the ALJ did not have to discuss the combined effects of plaintiff's impairments in evaluating equivalency. Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).

The ALJ accepted Dr. Furst's opinion of intermittent moderate functional limitations. (Tr. 151-52). The ALJ found plaintiff moderately limited in social functioning and maintaining concentration, persistence and pace. (Tr. 14). In his assessment of plaintiff's residual functional capacity (RFC), the ALJ wrote that plaintiff should have limited interaction with the public and co-workers, and that plaintiff works best alone in a "predictable and stable environment at the low end of the pressure spectrum in simple one to three step work tasks." (Tr. 15-16).

Plaintiff is correct that the ALJ did not mention the global

assessment of functioning (GAF) score of 50 assessed by Dr. Furst. This score may indicate serious symptoms or a serious impairment in social or occupational functioning. See American Psychiatric Ass'n, <u>Diagnostic & Statistical Manual of Mental Disorders</u> 34 (4th ed. Text Revision 2000) (DSM-IV). The GAF score is thus not necessarily inconsistent with Dr. Furst's assessment of moderate functional limitations, and plaintiff does not so argue. The decision indicates that the ALJ considered Dr. Furst's report and accepted his opinion. (Tr. 13). It does not appear to the court that the ALJ likely rejected the GAF score, even though he did not discuss it in his written decision. The ALJ's findings regarding Dr. Furst's report are sufficiently detailed to permit meaningful review.

Medical reports are not incomplete for lack of a medical source statement about what a claimant can still do. 20 C.F.R. § 404.1513(b)(6). Notably absent from the medical reports of treatment providers who did not submit medial source statements are subjective complaints or objective assessments of functional limitations. In the circumstances of this case, the decision of the ALJ not to recontact plaintiff's treatment providers for medical source statements does not require remand. See <u>Purvis v. Apfel</u>, 57 F.Supp.2d 1088, 1092 (D.Or. 1999). Where as here, plaintiff does not explain her theory of medical equivalency, the ALJ also did not have to consult a medical expert (ME), as

3 - ORDER

plaintiff contends.  See 20 C.F.R. § 404.1527(f)(2)(iii); cf. SSR 96-6p (ME opinion required when ALJ opines that additional medical evidence might change State agency consultant's finding that an impairment is not equivalent in severity to a listed impairment).  Plaintiff does not demonstrate that the ALJ failed to adequately develop the record.

The ALJ stated clear and convincing reasons to reject plaintiff's testimony of limitations precluding all work.  The ALJ noted that (1) the medical evidence does not document the severity of symptoms alleged, (2) while plaintiff testified she was barely able to get off the couch, she told her physician she wanted to lose weight, was planning to begin exercising in twenty to thirty minute periods, and was taking afternoon walks, and (3) while plaintiff testified to a fear of passing out, there is no evidence she has passed out, and Dr. Stephens reported that plaintiff has never had an episode of loss of consciousness secondary to hypoglycemia.  (Tr. 15, 216, 224, 233).  In determining credibility, the ALJ may consider a lack of objective medical evidence supporting the alleged severity of symptoms, and inconsistencies between plaintiff's testimony and the record.  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).

Plaintiff argues that she did not allege that she is unable to perform "any basic work activities," nor testify that she can "barely get off the couch," as the ALJ asserts.  The court does

not find these words in the transcript, but any mischaracterization by the ALJ is harmless. See Batson v. Commissioner, 359 F.3d 1190, 1197 (9th Cir. 2004). Plaintiff alleges an inability to work due to disability. She testified that she needs to lie down for two hours twice per day due to severe headaches resulting from high blood sugar (Tr. 273), she sometimes has to rest and lie down during two-week periods of pain caused by polycystic ovary disease or syndrome (Tr. 274), she can sit for one hour or stand for half an hour until her back becomes sore (Tr. 277), she thinks she cannot lift ten pounds (Tr. 277), any exercise may result in low blood sugar (Tr. 277), household chores are limited to putting dishes away and picking up clothes (Tr. 278), she has fallen on the steps of her apartment due to low blood sugar (Tr. 278), she does not help her husband with grocery shopping because she becomes disoriented (Tr. 279), and at her former data entry job, she would pass out and fall over at her desk (Tr. 269). There is no question plaintiff asserts limitations and severity of symptoms in excess of that documented in the objective medical evidence and not consistent with her exercise plan, as noted by the ALJ.

Plaintiff contends the ALJ improperly rejected her husband's testimony regarding her emotional lability and physical effects, including mental confusion, and that he has to do most household chores. The witness actually testified that he does most

5 - ORDER

household work, and that he has to do the shopping. (Tr. 282).
The ALJ found the witness

> generally credible in as much as he is reporting his
> observations of the behavior the claimant demonstrates.
> He is not knowledgeable in the medical and/or
> vocational fields and thus is unable to render opinions
> on how the claimant's impairments impact her overall
> abilities to perform basic work activities at various
> exertional levels.

(Tr. 15). The parties dispute whether the ALJ accurately stated the law respecting consideration of lay witness testimony. The witness is competent to testify to his observations of plaintiff's symptoms, but not to make a medical diagnosis. See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). In any event, the ALJ apparently credited the witness's testimony regarding plaintiff's emotional lability and confusion. The ALJ included limited interaction with others and a "predictable and stable work environment at the low end of the pressure spectrum in simple one to three step work tasks" in his assessment of plaintiff's RFC.

Plaintiff contends the ALJ erroneously omitted plaintiff's confusion and inability to focus one third of the time from the hypothetical question posed to the VE. The ALJ limited the individual in his hypothetical to one, two and three step tasks. (Tr. 285, 287, 289). Plaintiff does not cite to a portion of the record in support of her contention that she cannot focus one third of the time. She alleged on a questionnaire that she

requires daily rest periods or naps up to three hours. (Tr. 79). As noted, she also testified she must lie down for two hours twice per day. (Tr. 279). She further stated she experiences symptoms from high or low blood sugar levels two or three times per day (Tr. 271-72). As discussed above, the ALJ permissibly rejected plaintiff's testimony of limitations precluding all work. To the extent the ALJ did not accommodate plaintiff's inability to focus or "brain freeze" (Tr. 272) in his hypothetical questions to the VE, he was not required to do so. As discussed above, the ALJ permissibly rejected plaintiff's allegation of this degree of symptom.

Plaintiff finally argues that the VE's testimony that diabetics can perform jobs identified by the VE is unsupported by a proper foundation, as the VE provided no numbers or facts, and could not say where he obtained his information. The VE in fact testified that he based his opinion on his professional observations of diabetics in the workplace. (Tr. 293). The VE's testimony therefore had evidentiary value, and the ALJ did not err in relying on it.

Based on the foregoing, the decision of the ALJ is free of

///

///

///

///

material legal error and supported by substantial evidence.

## Conclusion

The decision of the Commissioner is affirmed.

IT IS SO ORDERED.

DATED this 5th day of ~~June,~~ July 2005.

*Michael R. Hogan*
United States District Judge